# Duquesne Bond Corporation *v.* American Surety Co. of New York, Appellant.

*Attachment execution—Stock of corporation—Stipulation on appeal—Interpleader proceedings—Res adjudicata—Parties.*

1. An attachment execution was issued against a railway company to attach shares of stock standing in the name of the defendant in the execution. After judgment against the garnishee, an appeal was taken, and, in lieu of bail on appeal, a stipulation was entered into by the plaintiff and defendant in the attachment proceedings, and a corporation and others claiming ownership of the stock, by which it was agreed that the shares should be deposited with the prothonotary of the lower court, that the garnishee might prosecute its appeal, that the appeal should not be a supersedeas, that the plaintiff might proceed by interpleader proceedings, by serving the claimants with an appropriate writ; that the alleged owners should have the right to file a claim for the stock alleged to be owned by them, and that the question of the ownership of the shares should be determined in the proceedings in the manner provided by the Sheriff's Interpleader Act of 1897. The garnishee did not prosecute its appeal; but the defendant instituted the interpleader proceedings, as soon as an attempt was made physically to take the stock in execution. The corporation claimant of the stock was not a party in the attachment proceedings, was not served therein, did not intervene, and had no notice of them, other than the knowledge of certain of its officers acquired when they were not acting for the claimant. *Held,* (1) that the claim of the corporation alleging ownership of the stock was not res adjudicata by the attachment proceedings; (2) that the corporation could under the stipulation establish its ownership of the stock in the interpleader proceedings; (3) that the fact that the appeal of the garnishee was not pressed, was immaterial.

2. The Act of June 16, 1836, Section 34, P. L. 761, 767, does not compel, but permits, a claimant of stock to become a party to the attachment suit.

*Corporations—Stock—Voting trust—Assignment of stock.*

3. Where an owner of stock sells it to another for value, and the vendee deposits it with a trust company acting as depository for a voting trust, and receives the certificate of the voting trustees, the vendee will be entitled to receive the stock if for any reason the voting trust agreement fails.

4. Where, upon the termination of a voting trust, the trustees execute assignments in blank in a sufficient number to furnish one for each stock certificate, and these are delivered with the understanding that they shall be attached to the stock certificates, when the latter are received from the depository of such stock, and they are so attached, the delivery of the assignment in blank, constitutes a valid transfer of title out of the voting trustees.

5. Any prior bona fide assignment of stock for value will effectually pass the transferer's interest therein, so far as to supersede the rights of an attachment or execution creditor to levy upon it for a debt due by the transferrer.

*Corporations—Stock—Voting stock—Ownership—Evidence.*

6. Where stock is voted under a proxy from a person whose name stands on the books of the corporation as the owner of record, such fact is not conclusive evidence that the person in question is the owner thereof, where the ownership of the stock is in dispute. Such a fact is for the consideration of the jury with the other evidence in the case.

*Practice, Supreme Court—Assignments of error—Documentary evidence.*

7. Assignments of error to the admission or rejection of documentary evidence will not be considered, where the documents in question are not set forth in the assignments.

Argued Feb. 17, 1919. Appeal, No. 275, Jan. T., 1919, by defendant, from judgment of C. P. Lebanon Co., Sept. T., 1917, No. 151, on verdict for plaintiff in case of Duquesne Bond Corporation v. American Surety Company of New York. Before BROWN, C. J., STEWART, MOSCHZISKER, WALLING and KEPHART, JJ. Affirmed.

Sheriff's interpleader to determine ownership of stock of a corporation.

Verdict and judgment for plaintiff for the shares of stock in question. Defendant appealed.

*Error assigned,* amongst others, was in not entering judgment for defendant n. o. v.

*Warren G. Light* and *Wm. Y. C. Anderson,* for appellant.—That the appellee could and should have appealed

in its own right from the judgment against the railway company instead of merely participating in the latter's appeal is plain from the decision in Knights of Joseph Building & Loan Association v. Guarantee Trust and Safe Deposit Company, 69 Pa. Superior Ct. 89.

The appellee from the moment it executed the stipulation that plays so large a part in this case, put itself in the position of a stockholder in the railway company, and therefore brought itself within the purview of the decision in Wilson v. Pittsburgh, etc., Coal Company, 43 Pa. 424.

The courts look beyond the nominal party, and treat as the real party him whose interests are involved in the issue, and who conducts and controls the action or defense: Peterson v. Lathrop, 34 Pa. 223; Raisig v. Graf, 17 Pa. Superior Ct. 509; Schwan v. Kelly, 173 Pa. 65.

The voting trust of the railway company stock as pleaded and proved by the appellee was illegal, in that it was not intended to promote the best interests of all the stockholders of that company, and in that one of the trustees, Taylor, had no beneficial interest in the ownership of the franchise, the subject of the trust: Lafferty's Est., 154 Pa. 430; Vanderbilt v. Bennett, 6 Pa. C. C. R. 193.

*Henry O. Evans,* of *Evans, Noble & Evans,* for appellee.—Knowledge of garnishment and opportunity to intervene does not compel intervention by claimants: Chester v. Schaffer, 24 Pa. Superior Ct. 162.

Appellee's failure to appeal from the judgment against garnishee does not bar it from asserting its ownership.

OPINION BY MR. JUSTICE MOSCHZISKER, March 24, 1919:

In 1917, the American Surety Company of New York, defendant and appellant in the present suit, obtained a judgment against the Ephrata & Lebanon Street Railway Company, as garnishee; this was entered in a pro-

ceeding whose object was to attach certain shares of the railway company's stock, standing on its books in the name of Joseph A. Vandegrift, a debtor of the surety company and defendant in that action; following the judgment, bail for appeal was fixed at $50,000; and, the garnishee not being able to secure a bond in such an amount, it, together with the plaintiff and defendant in the attachment proceeding, the Duquesne Bond Corporation (plaintiff and appellee in the case now before us) and certain other persons claiming to own the attached stock, entered into a written stipulation, reciting, inter alia, that the garnishee, who was "not the owner of said stock" and had "no interest therein," had appealed to the Supreme Court, that "the Duquesne Bond Corporation," with others, naming them, asserted ownership of such stock, and that it was "the desire of both the plaintiff and garnishee, and the several owners hereinbefore set out, to expedite the final determination of this case and of all questions relating to the title of the shares of stock which are the subject of the judgment against the garnishee; therefore, it is agreed that, in consideration of the alleged owners depositing the stock certificates in their possession with the prothonotary of the court below," the parties "shall proceed as follows with respect to the said judgment and the appeal of the said garnishee therefrom and execution thereon." After this the agreement states that the garnishee "May prosecute its appeal," without entry of a $50,000 bond, "if it so desires," but that the appeal shall not be a supersedeas, and the plaintiff may proceed to execution against the stock represented by the certificates so deposited, notwithstanding the pendency of the appeal, by serving the alleged owners of such stock with an appropriate writ (none of them having theretofore been served with any writ or formal notice in the attachment proceedings); finally, that, when so served, the "alleged owners shall have the right thereupon to file a claim" for the shares of stock "alleged to be owned by them" respectively, and "the question as

to who is the owner of said shares of stock shall be legally determined in said proceeding in the manner provided by law, to wit, under the Sheriff's Interpleader Act of 1897"; it being particularly stipulated, "that nothing contained in this agreement shall deprive, debar, limit or restrict the [American Surety Company] from its right of [invoking] the doctrine of res adjudicata against any of the parties or issues bound or to be bound by the verdict and judgment [in the attachment proceeding], subject, however, to any objection thereto on behalf of said garnishee, defendant, or alleged owners of said stock."

The present plaintiff, being a claimant for 2,197 shares of the attached stock, made no effort whatever either to intervene or appeal from the judgment in the attachment suit, but, in accordance with the terms of the above recited stipulation, entered its claim under the Interpleader Act, and, when this latter proceeding (being the present suit) came to trial, secured a verdict; judgment followed, and the American Surety Company, defendant, has appealed.

The Duquesne Bond Corporation, plaintiff, avers, in its interpleader declaration, that it owns 2,197 shares of the capital stock of the Ephrata & Lebanon Street Railway Company, attached by defendant as the property of Vandegrift; and that it derived title thereto, prior to the date of the attachment (March 4, 1915), for a valuable consideration, without notice of any claim on part of defendant, in this manner: On or about October 4, 1913, plaintiff agreed with Vandegrift for the purchase from him of certain bonds of the railway company and, as a consideration and inducement for plaintiff to enter into this contract, Vandegrift agreed to give with the bonds $80,000, par value, of the railway stock, the stock to be delivered to plaintiff proportionately as it should take up and pay for the bonds, and to be evidenced by voting trust certificates, the stock then being in such a trust; that plaintiff paid for all the bonds, by August 24, 1914; that, prior to this time, 1,517 shares of stock had

been assigned by Vandegrift to the voting trustees, who issued trust certificates therefor to plaintiff; that this voting trust was terminated on or about February 15, 1915, whereupon the trustees executed and delivered to plaintiff several assignments in blank, transferring the 1,517 shares of stock which belonged to plaintiff, the actual stock certificates being handed over by the depositary on March 18, 1915, at which time plaintiff attached thereto the blank assignments previously executed and delivered to it by the voting trustees; that, in addition to the aforementioned 1,517 shares, on August 21, 1914, Vandegrift also delivered to plaintiff two certificates for 40 shares each of the railway company's stock, which, on August 8, 1914, had been duly assigned to plaintiff; that, July 31, 1914, plaintiff made an agreement with Vandegrift for the purchase by it of certain other bonds of the railway company, and, as a consideration and inducement for plaintiff to enter into this contract, Vandegrift agreed to deliver to it 600 shares, par value, of the stock of the railway company, a certificate for which shares was, on August 21, 1914, duly assigned by Vandegrift to plaintiff; finally, that, prior to the date of the attachment, plaintiff corporation was known as "H. P. Taylor & Co.," its title, in 1916, being changed to the "Duquesne Bond Corporation."

Plaintiff made out its case, substantially as averred, by oral testimony and documentary evidence. Several of the assignments of error complain of the admission or rejection of proofs of the latter kind, but in each instance they are defective in failing to set forth the document in question, and for that reason alone they might be dismissed (Kaufman v. Pittsburgh, etc., R. R., 210 Pa. 440, 443; Creachen v. Bromley Bros. Carpet Co., 214 Pa. 15, 18; Hallock v. Lebanon, 215 Pa. 1, 3; American Car, etc., Co. v. Altoona & Beech Creek R. R., 218 Pa. 519, 520; Sunbury Boro. v. Sunbury, etc., Ry., 241 Pa. 357, 360; see also Jenkinson Co. v. Eggers, 28 Pa. Superior Ct. 151, 153, and cases there cited); none of them, how-

ever, indicate reversible error, as we shall show hereafter.

The other assignments complain of the refusal to either direct or enter judgment for plaintiff, and of excerpts from the charge. As to the first of these, it is sufficient to say that, on the evidence, the issues involved were for the jury; and as to the other group, when the excerpts criticized are taken with their contexts, no harmful error appears. While it is not necessary to pass specifically upon any of the assignments, we shall discuss appellant's principal contentions.

First, the doctrine of res adjudicata is urged as a bar against plaintiff's claim of title to the stock in controversy, and this because of the former judgment against the garnishee. Plaintiff was in no sense a party to the action in which that judgment was entered; it did not intervene therein, was not served with a writ or notice which would make it a party to such proceeding, no injunction relating to a transfer of the attached stock was there issued against plaintiff, nor, prior to the garnishee's appeal, was there any attempt to levy upon or take the stock out of plaintiff's possession or from the hands of those who then temporarily held the latter's certificate in trust.

True, certain of plaintiff's officers and employees, and one of its attorneys, had knowledge of the attachment, but in no instance did this knowledge come to them as representatives of plaintiff company, nor was it gained in transactions where they were acting in any manner for that corporation; hence, plaintiff was neither obliged to intervene in the attachment proceeding, nor to appeal from the judgment there entered: Gilkeson v. Thompson, 210 Pa. 355, 359; also see Wilson v. Second National Bank, 4 Sadler 68, and Holmes v. Paul, 3 Grant 299. It might have intervened as a claimant, but not having been summoned as a garnishee, it was under no legal duty in the premises. Its present claim was not affected, so it was not aggrieved; and, even if entitled to put itself

in a position to appeal from the judgment against the garnishee, it was not obliged to do so.

Section 34 of the Act of June 16, 1836, P. L. 761, 767, which provides for such a situation as here presented, specifies that "if any [other] person shall claim to be the owner of such stock, he may, upon filing an affidavit that the stock is really his property, and entering into recognizance with two certain sureties," be admitted "to become a party upon the record and take defense in like manner as if he were made garnishee in the writ." It will be noticed that the act does not compel, but permits, the claimant to become a party to the attachment suit; nor is there anything in the stipulation in this case which would force plaintiff either to become a party to or appeal from the judgment entered in such proceeding. On the contrary, the stipulation plainly contemplates that all claims of title to the stock in controversy be adjudicated in the anticipated interpleader proceeding, as was subsequently done.

The fact that the appeal taken by garnishee in the attachment suit was not pressed, can have no effect upon the present plaintiff. As already said, the stipulation between the parties states that the garnishee "may prosecute its appeal," not that it must do so. The appeal not having been prosecuted, the judgment against the garnishee stands as though affirmed; but, since the present plaintiff was in no sense a party to the action in which that judgment was entered, its claim of title was neither adjudicated nor affected thereby. It may be further noted that the stipulation particularly provides that "Should the Supreme Court finally decide said appeal ......in favor of the garnishee, then the prothonotary is hereby authorized and directed to return forthwith said 2,327 shares of stock to the Duquesne Bond Corporation [and other claimants named], notwithstanding the pendency of the execution and the sheriff's interpleader," but the stipulation is significantly silent as to any duty to hand over such stock, or give other satisfac-

tion to the present defendant (plaintiff in that case), should the appeal be decided in its favor.

The court below reports that, "At the trial of the issue under the attachment a verdict was rendered in favor of the American Surety Company finding that '2,327 shares of the capital stock of the garnishee on March 4, 1915, at the time of the service of the writ of attachment upon the said Ephrata & Lebanon Street Railway Company, stood in the name of Joseph A. Vandegrift, defendant, on the stock books of the said garnishee.'" So far as the case now before us is concerned, the sole effect of the attachment judgment against garnishee is to adjudicate, as between that corporation and the person in whose name the stock stood, the fact that the latter was the owner of such stock, free of any lien or obligation to the garnishee corporation; and this only for the purpose of clearing the way for a subsequent fi. fa. to take the stock in execution.

When carefully read and considered in connection with their facts, it will be seen that Weaver v. Huntingdon, etc., R. R. Co., 50 Pa. 314, and Glazier v. Jacobs, 250 Pa. 357, cited by appellants, really decided nothing relevant to the present case other than lending support to the determination just stated concerning the effect of the judgment against the garnishee; we conclude that such judgment, under the facts at bar, does not, on the doctrine of res adjudicata or otherwise, bar plaintiff's claim of title.

Section 13 of the Act of May 5, 1911, P. L. 126, 128, provides that "No attachment or levy upon shares of stock for which a certificate is outstanding shall be valid until such certificate be actually seized by the officer making the attachment or levy, or be surrendered to the corporation which issued it, or its transfer by the holder be enjoined." Here, as soon as an attempt was made to enforce the attachment, by way of execution against the stock, plaintiff immediately acted to protect its alleged ownership, and it did this in the manner agreed upon in

the before mentioned stipulation. Had plaintiff done nothing, and allowed the stock claimed by it to be physically taken in execution and sold as the property of the defendant, Vandegrift, in whose name such stock stood when the attachment was served on garnishee, a different question might be presented; which, as the case stands, need not be considered.

We have already decided that plaintiff proved its ownership of the stock in controversy; but, in that connection, several contentions are made by appellant, which, perhaps, may be discussed profitably.

Appellant attacks the validity of the voting trust under which, just prior to the attachment, the stock was held for plaintiff; but this attack is sufficiently disposed of by the following short excerpt from the paper-book of counsel for appellee: "Even if the voting trust was illegal and nudum pactum [which counsel well argue it was not], the ownership of the stock must rest somewhere. Vandegrift had sold his title, for value, to appellee, which had deposited the stock with the trust company [that acted for the voting trust], and appellee held the certificates of the trust [to the effect] that the trustees held the stock for it; therefore, if for any reason the trust agreement failed, the stock reverted to appellee."

Again, appellant contends appellee did not obtain a valid transfer of title out of the voting trustees because the assignments in blank, executed by such trustees and delivered to appellee, were not, when executed, at once attached to the several stock certificates. It appears that, simultaneously with the termination of the voting trust, on February 15, 1915, the trustees executed these assignments in a sufficient number to furnish one for each stock certificate, forthwith delivering them to appellee, with the intention and upon the understanding that it should attach the several assignments to the stock certificates, when the latter were received from the trust company which acted as the depositary of such stock.

Subsequently appellee exchanged the voting trust certificates for the stock due it, the stock certificates being received on or about March 8, 1915, when the transfers, previously signed and delivered by the trustees, were immediately attached thereto.   Section 9 of the Act of May 5, 1911, supra, provides that the delivery of a certificate without the endorsement requisite to a valid transfer thereof, but with the intent to make such a transfer, imposes an obligation, in the absence of an agreement to the contrary, upon the person so delivering, to complete the transfer, and that, when completed, it shall take effect as of the time when the endorsement was actually made; and we find nothing in the act which, as between the parties to the transfer or their privies, requires a separate instrument of assignment to be delivered simultaneously with the certificate sought to be transferred.   The general rule is that "Any [prior] bona fide assignment of stock for value will effectually pass the transferrer's interest therein, so far as to supersede the rights of an attachment or execution creditor to levy upon it for a debt due by the transferrer": 2 Daniel's Negotiable Instruments, sec. 1708e; also see U. S. v. Vaughan, 3 Binney *394; Com. v. Watmough, 6 Wh. *117, *137 et seq.   The contention under consideration is not sustained.

Finally, appellant lays much emphasis upon the fact that, after the date of the attachment, the stock in controversy was voted at an annual meeting of the corporation, under a proxy from defendant, Vandegrift, by an attorney for garnishee, who happened also to be counsel for plaintiff; and it urges this fact as conclusive evidence that Vandegrift, and not plaintiff, was, on the date of the attachment, the real owner of such stock.   At the time in question, the stock was registered on the books of garnishee company in the name of Vandegrift and, under Section 3 of the Act of May 5, 1911, supra, that corporation could recognize "the exclusive right of a person registered on its books as the owner of shares......to vote as such"; this being the law, and, when the Vande-

grift proxy was acted upon, there being a contest over the ownership of the stock, the effect of its use cannot be given controlling significance. The incident was called to the attention of the jury, however, and, in connection therewith, they were told to consider any act of plaintiff "which may be inconsistent with its claim of ownership." As previously said by us in this opinion, the facts in the case were for the jury; and the ones now under discussion, as well as all others, were submitted by the trial judge without substantial error.

Exler v. Wickes Bros., 263 Pa. 150, largely relied upon by appellant, in no particular rules the case at bar. There the party, who appellant claims occupied a legal position analogous to that of the present appellee (although the proceedings were different in character), had an opportunity in a prior suit to protect his property interest, but, instead of doing so, "in effect authorized and directed" one of the litigants in such prior suit to "protect his rights"; we ruled that, under such circumstances, he was bound by the former adjudication as to the ownership of the property in controversy, and this upon the ground that "one who has notice of a suit brought to determine ownership of property upon which he claims a lien, and authorizes a party to the suit, who is in possession of the property, to take such steps as will protect the former's rights, is concluded by the result of the litigation, although he does not intervene as a party." The marks of distinction between Exler v. Wickes Bros. and the present case are too plain to require discussion; the other cases cited by appellant are likewise readily distinguishable on their facts, and none of them governs here.

The several assignments of error hereinbefore referred to, as not in proper form, are dismissed, and the others are overruled; the judgment is affirmed.