## Metropolitan Edison Company v. Stewart Silk Company, Inc., et al.

*Smith & Paff* and *Harold J. Ryan* and *Howard V. Fisher*, of the Berks County Bar, for plaintiff.

*Asher Seip*, for defendant; *Fox & Fox*, for intervenor.

STEWART, P. J., July 2, 1934.—

### Admissions and facts found by the court

First. It is admitted by the parties that the plaintiff's claim is $1,540.16, with interest from September 30, 1930, for current furnished to Stewart Silk Company, Inc.

Second. It is admitted that Stewart Silk Corporation has in its hands a larger amount than the amount of Metropolitan Edison Company's claim. This amount is claimed both by Metropolitan Edison Company under its attachment and Commercial Factors Corporation under its factoring agreement.

Third. Commercial Factors Corporation and Stewart Silk Company, Inc., were both New York corporations, and on March 21, 1930, they entered into an

agreement which was to take effect from April 1, 1930, and continue indefinitely unless terminated by a week's written notice. This agreement was not terminated and was in force at the time the foreign attachment issued. The agreement itself is attached to the affidavit of defense filed by Commercial Factors Corporation.

Fourth. On September 29, 1930, and on October 7, 1930, six bales of silk were received by United States Testing Company, Inc., Hoboken, N. J. In each of the receipts was the following: "to be held by us on storage and to be delivered to Commercial Factors Corporation", and on October 6, 1930, exhibit no. 20 was sent as follows:

"United States Testing Co.,            Oct. 6, 1930.
1415 Park Ave.,
Hoboken, N. J.

Gentlemen: Please ship to Stewart Silk Corporation, Easton, Pa., the following 6 bales held at your warehouse for our account:—Nos. 98201-02-03-04-05-06.

Please send shipping receipt thereof to us and to the attention of the writer.

Yours truly,

COMMERCIAL FACTORS CORPORATION.

DJ:MW              By (signature not readable).

Ship by Arrow Carrier.

Bale No. 98201—Will reach you from North Am. Laboratories—if not already in your possession."

Fifth. On October 6, 1930, Stewart Silk Company, Inc., sold to Stewart Silk Corporation six bales of silk, which was the same silk that was stored with United States Testing Company, Inc., amounting to the sum of $1,585.80. On the invoice was written the following: "This account has been assigned to, is owned by, and is payable in New York funds, to Commercial Factors Corporation factor, 2 Park Avenue, New York."

Sixth. The silk in the bales was manufactured by Stewart Silk Corporation shortly after it was received, the exact time not being given, but the silk was not in the possession of Stewart Silk Corporation at the time the attachment was levied, to wit, January 9, 1931.

Seventh. On January 2, 1931, Stewart Silk Corporation sent a check for $1,585.80, payable to the order of Stewart Silk Company, Inc., instead of to the order of Commercial Factors Corporation. The treasurer of Stewart Silk Company, Inc., then indorsed the check "Pay to the order of Commercial Factors Corporation." Stewart Silk Corporation then stopped payment on the check.

Eighth. A sign was placed at 16 East Thirty-fourth Street, New York City, N. Y., on April 1, 1929, reading as follows: "Stewart Silk Company, Inc., factored by Commercial Factors Corporation."

Ninth. A notice of lien was filed in the Register's Office in New York, County of New York, on August 22, 1930, a certified copy whereof is as follows:

"Notice of lien by corporation, pursuant to chapter 41, section 45, of the Consolidated Laws.

"Please take notice that under and by virtue of the provisions of section 45 of the Personal Property Law of the State of New York (chapter 326 of the Laws of 1911), the undersigned has and claims a lien created by agreement between the undersigned and Stewart Silk Co., Inc., upon merchandise and the proceeds thereof for the purpose of securing the repayment of loans and advances made and to be made upon the security of said merchandise and the

proceeds thereof and of securing the payment of commission and other charges provided for by such agreement.

I

" (a) The name of the lienor and the name under which it does business is
COMMERCIAL FACTORS CORPORATION.

" (b) Its principal place of business in the State of New York is at 2 Park Avenue in the Borough of Manhattan, City and County of New York.

" (c) The lienor is a corporation organized under the laws of the State of New York.

II

"The name of the person creating the lien is Stewart Silk Co., Inc., a corporation organized and existing under the laws of the State of New York.

"The interest of such person in such merchandise, so far as known to the lienor, is that of owner and/or consignor.

III

"The general character of merchandise subject to the lien or the merchandise which may become subject thereto is broad silks, cotton and silk fabrics or other textiles now owned by said Stewart Silk Co., Inc., or which said corporation may hereafter acquire, and particularly upon any such goods or merchandise in the possession or held by or for the account of the lienors upon consignment, or for any such goods or merchandise rejected and returned by customers, or any merchandise situated in or upon the premises at 16-22 East Thirty-fourth Street, Borough of Manhattan, City of New York, or situated upon any other premises. The period of time during which loans or advances may be made under the terms of the agreement creating the lien is hereafter indefinitely extended, but subject to cancellation at any time hereafter by 1 week's . . . prior written notice by either party to the other.

COMMERCIAL FACTORS CORPORATION,
(Signed) Lienor.
By FREDERIC F. deRHAM,
Secretary.

"Dated August 20, 1930.

"STATE OF NEW YORK, COUNTY OF NEW YORK, ss:

"Frederic F. deRham, being duly sworn, deposes and says: I am the secretary of Commercial Factors Corporation, the corporation described in the foregoing notice of lien as the lienor. I have read the foregoing notice of lien and know the contents thereof, and the statements therein contained are true to my knowledge.

(Signed) "FREDERIC F. deRHAM.

"Subscribed and sworn to before me this 20th day of August 1930.
(Signed) ANNA MAIER."

Tenth. Chapter 45 of the Personal Property Laws of New York is as follows:

"If the agreement creating such lien shall also give the lienor a right to or lien upon accounts receivable resulting from or which may result from a sale or sales of merchandise subject to the lien, or part of such merchandise, such right or lien shall not be void or ineffectual as against creditors or otherwise, by reason of want of possession of any such accounts on the part of lienor or by reason of failure to make or deliver a further assignment of any such account, provided a bill, invoice, statement or notice shall be mailed, sent or delivered to the person owing such accounts receivable stating or indicating

that the account is payable to the lienor, and such mailing, sending or delivery of such bill, invoice, statement or notice shall have the same effect as a formal statement of such account to the lienor named therein: provided there shall be placed and maintained in a conspicuous place at the entrance of every building or place in or at which such merchandise or any part thereof shall be located, kept or stored, a sign, etc." and "it [such notice] must be filed . . . in every town or city where the merchandise subject to the lien or any part thereof is or at any time shall be located, kept or stored."

## Discussion

An effort was made to show that Commercial Factors Corporation had been paid the amount of this claim, but the testimony shows conclusively that it has not been paid. No discussion of that matter is required. The garnishee, Stewart Silk Corporation, filed an answer in whcih it admitted that it had in its hands the sum of $1,585.80, and averred that it did not know whether the sum should be paid to Stewart Silk Company, Inc., or to Commercial Factors Corporation. Commercial Factors Corporation filed a petition to intervene, and by agreement of counsel the intervention was allowed. Did the sum in dispute belong to Stewart Silk Company, Inc., or to Commercial Factors Corporation? The rule is well settled that the plaintiff in a foreign attachment stands upon no better footing as to the thing attached than his debtor, the defendant in the attachment: The United States v. Vaughan et al., 3 Binney 392. In Patten v. Wilson, 34 Pa. 299, the syllabus is: "An attaching creditor stands in the shoes of the debtor; and any equities that could be set up against the latter, are equally available against the former."

In the late case of O'Brien v. Radford et al., 113 Pa. Superior Ct. 88, the syllabus is: "An attaching creditor necessarily claims through his debtor and can acquire no greater right than was vested in him at the time the writ was served on the garnishee."

In Jarecki Mfg. Co., Ltd., v. Hart Bros. et al., 5 Pa. Superior Ct. 422, the syllabus is: "An attaching creditor necessarily claims through his debtor, and can acquire no greater right than was vested in the latter at the time the writ was served upon the garnishee."

"A valid assignment of a fund cannot be set aside by attachment proceedings subsequently instituted in favor of a third party, and the omission of notice to the garnishee cannot avail an attaching creditor who pursues his legal remedy irrespective of contractual changes."

The opinion of Judge Smith, commencing at page 425 to the end, is so satisfactory that we quote it in full, as it bears upon two branches of the present case: (1) That the plaintiff herein can have no higher rights than the Stewart Silk Company, Inc., had; and (2) upon the distinction between cases where the subject matter is not personal property, but a debt. Judge Smith said (p. 425): "An attaching creditor necessarily claims through his debtor and can acquire no greater right than was vested in the latter at the time the writ was served upon the garnishee: Reed v. Penrose, 2 Grant 472; Patten v. Wilson, 34 Pa. 299. This principle is not, as contended, limited in its purpose and application to the garnishee and for his protection only. It extends to the rights of all persons interested in the fund at the time the attaching creditor seeks to appropriate it, whether as joint owners, copartners, or assignees of the defendant debtor; and the attaching creditor's right is subordinate to all bona fide claims existing before the writ is served. He is permitted to attach

and take what may be due to his debtor, but he cannot by this proceeding affect the rights of other persons which had vested before the attachment became operative. A valid assignment of a fund cannot be set aside by attachment proceedings subsequently instituted in favor of a third party. And while want of notice of an assignment would subject the assignee to all the equities of the garnishee, should any exist, arising from a failure to give notice, the omission of notice cannot avail an attaching creditor, who pursues his legal remedy irrespective of contractual changes; no more than notice of an assignment, fraudulent as to creditors, would defeat attachment proceedings. The rights of contending claimants are based upon the more substantial fact of a bona fide assignment of the fund for a valuable consideration before the service of the writ on the garnishee. If such a transfer be made neither notice nor the want of it can aid the attaching creditor: Pellman v. Hart, 1 Pa. 263; Noble v. Thompson Oil Co., 79 Pa. 354.

"The effort of the appellant's counsel to bring this case within the rule which avoids private sales of chattels without a transfer of possession or other act equivalent thereto, when assailed by execution creditors, is ingenious but not convincing. Ownership of choses in action does not· involve an open visible possession which may mislead others into giving credit on the faith of it, as in the case of chattels, and therefore the reason for the rule invoked does not exist with regard to choses in action. The assignment of a claim against a third person is more analogous to the sale of chattels while in the possession of a bailee, and it has been uniformly held that in such cases no actual delivery or further change of possession is necessary in order to pass the title against creditors: Linton v. Butz, 7 Pa. 89; Caulfield v. Van Brunt, 173 Pa. 428."

It cannot be disputed that Stewart Silk Company, Inc., intended by the agreement of March 21, 1930, to make an equitable assignment of the claim in suit to Commercial Factors Corporation. It reads:

"First. Stewart hereby constitutes the factor its sole factor with reference to the sale of its merchandise and agrees to consign or cause to be consigned to the factor at 18 East Thirty-fourth Street, New York City, or in care of dyers and finishers or in care of Stewart's selling agents or at such other place or places as may be mutually agreed upon all Stewart's merchandise, such merchandise to be consigned free of all charges and liens and to be sold and disposed of by Stewart or its selling agents and the proceeds thereof to be received and collected and accounted for by the factor as hereinafter provided." . . .

"Second. No sales or deliveries of merchandise either by Stewart's own selling department or by its independent selling agents shall be made without the written approval of the factor as to terms and credit of purchasers, and all orders, memoranda, and contracts of sale shall so stipulate. The factor shall have the right to withdraw such approval at any time before delivery. All sales are to be made in Stewart's name, the purchase price, however, to be payable only to the factor and all orders, memoranda, invoices, and contracts of sale shall so stipulate and be in form satisfactory to the factor. All remittances, checks, accounts, bills receivable, and proceeds of sale shall be the factor's sole property, and Stewart agrees to confirm the factor's title thereto by the execution, from time to time, of whatever evidences of title the factor may deem necessary or desirable." . . .

"Eighth. As security for advances by the factor and for all Stewart's indebtedness to the factor, including contingent liability upon letters of credit and otherwise, the factor shall have a general lien upon all the goods consigned

to it as herein provided or otherwise. The rights of the factor under this agreement, including the right to have, hold, and sell the consigned goods, as aforesaid, and to collect and receive the proceeds thereof and of said accounts and to its said commissions, shall not be affected by any devolution or transfer of the rights or interest of Stewart, whether the same shall be voluntary or by act of law."

Other provisions from this lengthy agreement might be cited to show that the debt due to the defendant had been equitably assigned by it to Commercial Factors Corporation. The doctrine of equitable assignments is well understood in Pennsylvania. In East Lewisburg Lumber & Mfg. Co. v. Marsh, Dunkel et al., 91 Pa. 96, the syllabus is: "An assignment for a valuable consideration of demands, having at the time no actual existence, but which rests in expectancy only, is valid in equity as an agreement, and takes effect as an assignment, when the demands intended to be assigned are subsequently brought into existence.

"Equity will support assignments of contingent interests and expectancies; things which have no present actual existence, but rest in mere possibility; not indeed as a present positive transfer operating *in presenti*, for that can only be a thing *in esse*, but as a present contract to take effect and attach as soon as the thing comes *in esse*."

In Davis v. Billings, 254 Pa. 574, the syllabus is: "An executory agreement whereby the owner of personal property discloses an intention to make the property mentioned in the agreement security for a debt or other obligation creates an equitable lien upon the property indicated, enforceable against the property in the hands of not only the original pledgor but of his heirs, administrators, executors, voluntary assignees and purchasers or encumbrancers with notice."

In Duquesne Bond Corp. v. American Surety Company of New York, 264 Pa. 203, the syllabus is: "Any prior bona fide assignment of stock for value will effectually pass the transferer's interest therein, so far as to supersede the rights of an attachment or execution creditor to levy upon it for a debt due by the transferer."

No particular form of words or particular form of instrument is required in an equitable assignment. Any binding appropriation of it to a particular use, by any writing whatever, is consequently an assignment, or what is the same, a transfer of the ownership; and that it may be affected by a letter of attorney to collect and distribute so as to be good against an attachment by particular creditors, was ruled by the court in The United States v. Vaughan et al., 3 Binn. 392, and Sharpless v. Welsh et al., 4 Dallas 279. Exhibit no. 1 in this case is an unusually explicit equitable assignment.

The learned counsel for the plaintiff rely very much upon the well-understood principle that, where there is a sale of personal property, there should be a taking of possession by the vendee, and that retention of possession by the vendor is a fraud upon creditors of the vendor. They cite the leading case of Clow et al. v. Woods, 5 S. & R. 275, and a number of later authorities, ending with Shipler et al. v. New Castle Paper Products Corp., 293 Pa. 412. They all refer to property, and as Judge Smith said in the opinion quoted at large above, they do not apply to choses in action or to bailments. More than usual care was exercised in this transaction to preserve the rights of Commercial Factors Corporation. When the goods were bought, they were plainly marked so that the interest of Commercial Factors Corporation appeared. When they were in storage, that interest was again plainly made apparent, and when the silk was sent to Stewart Silk Corporation it was again shown to it, and it had notice

of the assignment, and when the check reached the hands of the defendant herein it was made payable to the right party by endorsement. After reading the evidence, there is not the slightest trace of fraud in this transaction, and Commercial Factors Corporation should receive this money.

It is argued by the learned counsel for Commercial Factors Corporation that it is entitled to recover because this was a New York contract and that, the pledge having been accepted in New York, the law of New York must govern. That is a correct contention as to the general application of the law of New York to the questions involved in this suit. 12 C.J. 449, secs. 30 and 31. We do not base our decision on chapter 45 of the Personal Property Laws of New York, offered in evidence, or on the exhibits referred to in the ninth finding of fact. These exhibits were placed in evidence after the trial was closed, by an agreement under date of June 18, 1934, between counsel, subject to specific objections made therein, which is marked filed. In the tenth finding of fact, we have found chapter 45 of the Personal Property Laws of New York to be as stated. We think that section is not controlling, because it is not contended that the silk in suit was ever stored at 16 East Thirty-fourth Street, New York. That part of the intervenor's contention is very much on the same footing as the plaintiff's contention, that the silk as silk is the subject of the present investigation. As we have found, the silk was not in existence when the attachment was levied. We are dealing with money instead of silk, and that money plainly belongs to the Commercial Factors Corporation, by reason of the equitable assignment and not by reason of the provisions of chapter 45, supra.

### Conclusions of law

First. Metropolitan Edison Company is in the same position with respect to Stewart Silk Corporation, garnishee, and Commercial Factors Corporation, intervenor, as Stewart Silk Company, Inc., occupied to them before the attachment.

Second. Under the facts found in this case, Stewart Silk Company, Inc., had no claim to the fund in suit in the hands of Stewart Silk Corporation, the same having been equitably assigned by it to Commercial Factors Corporation.

Third. The agreement of March 21, 1930, between Commercial Factors Corporation and Stewart Silk Company, Inc., was in full force on September 29, 1930, and on October 7, 1930, and governed the proceeds arising from the shipment of the silk by Stewart Silk Company, Inc., to Stewart Silk Corporation, which shipment was also assented to by Commercial Factors Corporation, and the debt from Stewart Silk Corporation to Stewart Silk Company, Inc., arising from said transactions, was due and belonged to Commercial Factors Corporation by virtue of the said agreement.

Fourth. The silk in suit having been manufactured and not being in the hands of the defendant in the attachment at the time it was levied, the principle applicable to a levy on personal property sold to a vendee, but possession remaining in a vendor, has no application to the present suit.

Fifth. Under the facts found, judgment must be entered in favor of Commercial Factors Corporation.

### Order of court

And now, July 2, 1934, the court's findings of fact and conclusions of law are filed and made a part of the record in the above case. Notice of these findings and conclusions shall be given forthwith by the prothonotary to the parties, or their attorneys of record, and if no exceptions thereto are filed in the prothono-

tary's office within 30 days after service of such notice, judgment shall be entered by the prothonotary in favor of Commercial Factors Corporation against Stewart Silk Corporation, garnishee, without further order of court, for the sum of $1,540.16, with interest from September 30, 1930, the sum admitted by it to be in its hands at the time the attachment was served, and costs of suit; the judgment to read that Commercial Factors Corporation to have execution of so much of the debt due by the garnishee to the defendant, and attached in the hands of the garnishee, as may satisfy the said judgment, interest, and costs, and if the said garnishee refuses or neglects, on demand by the sheriff, to pay the same, then the same to be levied of the said garnishee, its goods and lands, according to law.